■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. DWIGHT GREEN, Appellant.— Judgment, Supreme Court, New York County, rendered on April 14, 1972, affirmed. Concur — McGivern, J. P., Nunez, Steuer and Tilzer, JJ.; Murphy, J., dissents in the following memorandum: The defendant was convicted after a jury trial of criminal possession of a dangerous

drug in the fourth degree and sentenced to probation. Three police officers testified that on February 19, 1970, while one officer went to the apartment door, the other two stationed themselves at the rear of the building. The officer inside the building knocked on the door of apartment 2R, and when someone asked "Who is it?" he responded: "Police." The officer heard movement in the apartment and a window opening, after which he was admitted. The two officers in the yard testified they saw a window open on the second floor and a bag thrown from it. While one officer could not identify the person who threw it, Officer Rainey testified he saw the head and shoulders of defendant. Officer Rainey climbed over a fence and retrieved the bag which contained 56 glassine envelopes. They went into the apartment and officer Rainey arrested both the defendant Green and the other occupant, Holmes, for possession of a dangerous drug. Officer Rainey also testified that earlier in the year, on January 17, he went to apartment 2R to investigate a complaint. When he knocked on the door, someone inside asked: "Who is it?" When Officer Rainey said it was the police he was told to wait and he heard a window open and close. He knocked again, and when told he would not be admitted he said he would return. The defendant testified and denied he ever used or possessed drugs at any time. The indictment consists of a single count alleging possession. However, in its original charge, and on two separate occasions during deliberations, the court charged: "When narcotics are in an apartment that is under a person's control, it may be inferred that that person had both knowledge and control of the narcotics. This inference is based largely upon the nature of drugs and the manner in which its illegal traffic is conducted. They are sold for exorbitant sums and are, therefore, of great value to persons possessing them. Furthermore, since their mere possession may subject a person to a conviction, narcotics traffic is conducted with the utmost secrecy and care." Defense counsel on each occasion correctly objected to this language regarding the sale of drugs. Such language, taken from *People* v. *Reisman* (29 N Y 2d 278, 286-287), is not warranted under the facts and proof in this case. The court's repeated emphasis on drug trafficking is clearly prejudicial under the circumstances of this case. In *Reisman* the defendant was arrested with a carton in his hands containing marijuana. He did not deny possessing the carton but denied "knowledge" of its contents. Here the defendant's defense was that he never possessed it. Nor was he charged with possession with intent to sell. (*People* v. *Smith,* 26 N Y 2d 913.) Officer Rainey's testimony on direct examination concerning his January visit to the apartment should also have been excluded. On that occasion he neither saw nor heard the defendant at or in the apartment. The effect was to place before the jury evidence of a prior narcotics investigation not shown to be connected with this defendant, but which is inherently prejudicial to him. This, coupled with the summation, further exceeded the bounds of a fair trial. The District Attorney went beyond the evidence when he stated: "56 bags of heroin has value. It has value on the street. It has value in the alleys, on the roof-tops, in the hallways. There are something like 400,000 addicts in New York City. This is pretty darn valuable stuff. What was Dwight Green's motive to possess heroin? He doesn't have to be an addict to have a motive. * * * No, Dwight Green apparently has never experienced those symptoms of addiction. And what does this prove? Probably proves that the 56 bags of heroin were not for personal use. But that stuff doesn't exist in a vacuum. Not only heroin addicts possess heroin, and I'm sure this doesn't need spelling out to you." In summation the District

Attorney also commented upon defendant's failure to call witnesses to testify to his good character. He told the jury: "You might bring in character witnesses, people to take the stand and testify that Miss Kelley is a person of good character, Mrs. Claybush is a person of good character, Mr. Waldbaum is a person of good character, known in the community, known to be honest, known to be reputable. That has weight. I think that would be influential to you if you heard such testimony about Dwight Green. But you did not." The People say this was a momentary lapse, and well it may be; but, unfortunately, it is so highly prejudicial that, notwithstanding the absence of an objection, in itself it mandates a reversal. (*People* v. *Hinksman,* 192 N. Y. 421; *People* v. *Sharp,* 107 N. Y. 427.) Essentially the issue on the trial was one of credibility between Officer Rainey, who said he saw defendant drop the bag of narcotics out the window, and defendant, who denied ever having it. There must be a basic fairness in a trial. The errors here prevented an impartial verdict on the issue of who was telling the truth and weighted it against the defendant. I would reverse the judgment and grant a new trial.